UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ALCY JOSEPH, JR.                           CIVIL ACTION

VERSUS                                     NO.  09-7562

NELSON COLEMAN CORRECTIONAL                MAGISTRATE JUDGE
CENTER ET AL.                              JOSEPH C. WILKINSON, JR.

## ORDER AND REASONS ON MOTION

This is a prisoner's civil rights suit for damages pursuant to 42 U.S.C. § 1983,

filed pro se but <u>not</u> in forma pauperis.  Plaintiff Alcy Joseph, Jr. asserts three kinds of

claims against ten (10) remaining defendants,[1] all of whom are employed at or affiliated

with the Nelson Coleman Correctional Center ("Nelson Coleman") in St. Charles Parish,

Louisiana.  His claims include: (1) inadequate medical care/medical policy in connection

with a tuberculosis inoculation he received upon entry into the jail; (2) retaliation for

filing grievances in the jail's Administrative Remedies Procedure ("ARP"); and (3) state

law claims for slander and/or theft/conversion based upon the confiscation of his driver's

license during his arrest before he was incarcerated.  All parties have consented to

proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  Record

Doc. No. 26.

---

[1]Several other originally named defendants have previously been dismissed. Record Doc.
Nos. 27 and 33.

Defendants' motion for summary judgment is pending before me.  Record Doc. No. 42.  The motion is supported by the affidavit of Joseph Cardella, Chief Deputy Sheriff of St. Charles Parish, who "oversees the direction and control of" Nelson Coleman.  Record Doc. No. 42-4 at ¶ 2.  Plaintiff filed a written response as ordered by the court.  Record Doc. Nos. 44 and 45.  Although the written response included no evidence, plaintiff was advised in my order concerning the motion, Record Doc. No. 44, that his testimony, provided on August 5, 2010, pursuant to Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny, and other submissions already in the record would be considered in opposition to the motion, so that there was no need to repeat it in his response.

Having considered defendants' motion for summary judgment, the record and the applicable law, and for the following reasons, IT IS ORDERED that defendants' motion for summary judgment is GRANTED.

## THE RECORD

In support of defendants' motion, Chief Deputy Cardella's affidavit establishes that the anti-tuberculosis inoculation on which Joseph bases his inadequate medical care and policy claim "is a normal and customary tuberculosis screening performed on all inmates entering the Nelson Coleman Correctional Center."  Record Doc. No. 42-4 at ¶ 6.  Defendants argue that, in the prison setting, their "standard operating policy and

procedure to scratch test all inmates entering Nelson Coleman . . . for tuberculosis" is reasonable and that inoculating plaintiff as they did cannot constitute deliberate indifference to serious medical needs sufficient to establish a Section 1983 medical care claim.  Record Doc. No. 42-2 at pp. 2-3.  As to plaintiff's retaliation claim, Cardella's affidavit asserts that plaintiff's ARP grievance concerned actions taken by arresting officers during his arrest <u>before</u> he was brought to the jail, <u>not</u> actions taken within the prison itself, and that their response to his grievance was therefore appropriate, since the ARP can address only <u>prison</u> matters.  Finally, defendants argue that the court should not exercise its supplemental jurisdiction over plaintiff's state law claims because all of his federal claims must be dismissed.

In his written opposition, plaintiff alleges in general terms that "Nurse Lisa Byrd['s] negligence [in giving plaintiff the anti-tuberculosis inoculation] could've cause[d] petitioner serious future injury" and that he has suffered "serious chest pain since the shot for tuberculosis."  As to his retaliation claim, the written response asserts that he "was harass[ed], verbally threaten[ed] and intimidate[d] to stop filing grievance, which is a way to resolve prison problems and/or seek court interven[tion]."  The written response reiterates Joseph's state law claim that Deputy Breedy "stole" his driver's license from Joseph's parents' home during his arrest on October 21, 2009.  Record Doc. No. 45 at pp. 2-3.

Because plaintiff submitted no evidence in opposition to the motion, I have reviewed and considered the sworn testimony he provided in support of his claims on August 5, 2010.  Record Doc. No. 18.  On that date, Joseph testified that he had been incarcerated in Nelson Coleman from October 21, 2009 through March 9, 2010. He stated that he was arrested on October 21st on a charge of being a convicted felon living in a house where a gun was found, a violation of his parole.  He said he had been paroled from prison after being convicted of drug distribution.  Joseph stated that, although the criminal charges against him were dropped, his parole was revoked on January 7, 2010 and he is now serving the remainder of his original drug distribution prison sentence.

As to his medical care claim, Joseph testified that during initial medical screening and processing at Nelson Coleman after his arrest, he was given an anti-tuberculosis inoculation, which left him with a "sore" and ultimately a scar on his arm.  He stated that he was screened 13 or 15 years ago and he tested positive for tuberculosis, so that he had the inoculation when he was incarcerated at that earlier time.  Joseph testified that, when he was booked into Nelson Coleman on the parole violation charge, he did not recall and therefore did not tell prison officials that he had previously been inoculated for tuberculosis, and that the inoculation he was given at Nelson Coleman should not have been necessary.  He alleged that if medical personnel at Nelson Coleman would have had a proper "standard of care" or medical screening procedure in place, he would have been

asked whether he had previously been inoculated for tuberculosis, he would have been reminded that he had already been inoculated, and he could have avoided the inoculation.

Joseph testified that, when a nurse at the jail checked his inoculation three days later, she noted on his records that the inoculation "was okay," but when Doctor Woods examined him a few days later, the doctor was "highly upset" and wrote "error" on his medical records.  He testified that the "sore" from the anti-tuberculosis inoculation persisted for 30 days and jail personnel kept applying salve and Band-Aids, and he was told by some medical personnel that "he never should've took that shot."  Joseph stated that, when he complained, he was told that it was his own fault because he should have told jail personnel that he had previously been inoculated for tuberculosis.  During his testimony, he complained again that the error would not have occurred if a proper medical "standard of care" or policy had been in place at the jail.  He said he should have been asked whether he had already been inoculated upon his entry and processing into the jail.

Asked what injuries he suffered as a result of the tuberculosis inoculation, Joseph reiterated that he had a "sore" on his arm for about 30 days that ultimately healed, but left him with a scar he will have "for the rest of my life" and that there was also a "risk to my life" in that he did not know how it was going "to turn out, it could've killed me maybe."

As to his retaliation claim, Joseph testified that certain improper evidence was being used against him by arresting officers at his parole revocation hearing.  He testified that he wrote a grievance in the ARP at the jail, seeking a Sheriff's Department internal affairs investigation of the arresting deputies' conduct.  Joseph testified that defendants retaliated against him for filing this ARP grievance by disciplining him by giving him "three weeks with no canteen."  Joseph explained that this meant he was not permitted to buy snacks or other personal items from the jail commissary for three weeks.

Joseph testified that he received a written "write-up" charging him with aggravated disobedience for refusal of an oral order, but he had to pay $1 for a copy of the write-up.  Joseph confirmed that one of his previous submissions, Record Doc. No. 9 at p. 10, is the disciplinary report dated January 26, 2010, written by defendant Captain Dale, which resulted in his three-week loss of commissary privileges.  He stated that Captain Dale's disciplinary report said that parole decisions were not a proper subject for the jail's ARP.  The disciplinary report specifically notes that Joseph was not placed in administrative segregation as a result of the alleged violations, and Joseph testified that his only punishment was three weeks of lost commissary privileges. Joseph testified that he had taken Captain Dale's original decision to "the next step" of the ARP, and that is when he was written up for aggravated disobedience and punished by denial of commissary rights for three weeks.  Joseph testified that he appeared before a

disciplinary board consisting of three correctional officers, defendants Beard, Brooks and Walker, on the charge made by Dale, and the board imposed the three-week loss of commissary privileges. He complained that the board was not established in compliance with state Department of Corrections procedures.

As to his state law claims, Joseph testified that he was slandered by defendant Breedy, an arresting officer on the underlying criminal charges that subsequently led to his parole revocation. Joseph stated that Breedy slandered him when Breedy said Joseph's driver's license was no longer valid because he had been arrested. Joseph also alleged that Breedy wrongfully took his driver's license from his parents' home, where he was arrested. He described his claim as really "more theft than slander." He said that these events occurred on the morning of his arrest, before he was taken to jail.

At the conclusion of his testimony, Joseph specified that his medical care claims concerning the tuberculosis inoculation are against defendants Byrd, Hunter and Charles; that his retaliation claim is against defendants Dale, Brooks, Beard and Walker; and that his state law slander or theft claim is against defendant Breedy. He also stated that his claims against Sheriff Champagne and Warden Nowak are asserted because they are the jail's ultimate supervisors responsible for its operations and policies, including the allegedly inadequate medical "standard of care" policy and the failure properly to respond to his ARP grievances.

# ANALYSIS

## I.   STANDARDS OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but it is not required to negate elements of the nonmoving party's case. Capitol Indem. Corp. v. United States, 452 F.3d 428, 430 (5th Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists if a rational trier of fact could not find for the nonmoving party based on the evidence presented. National Ass'n of Gov't Employees v. City Pub. Serv. Bd., 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must come forward with evidence to support all essential elements of his claim. Id. (citing Celotex, 477 U.S. at 321-23). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other

facts immaterial."  Celotex, 477 U.S. at 323; accord Capitol Indem. Corp., 452 F.3d

at 430.

"Factual controversies are construed in the light most favorable to the nonmovant,

but only if both parties have introduced evidence showing that an actual controversy

exists." Edwards v. Your Credit, Inc., 148 F.3d 427, 432 (5th Cir. 1998); accord Murray

v. Earle, 405 F.3d 278, 284 (5th Cir. 2005).  "We do not, however, in the absence of any

proof, assume that the nonmoving party could or would prove the necessary facts."

Badon v. R J R Nabisco Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quotation omitted)

(emphasis in original).  "Conclusory allegations unsupported by specific facts . . . will

not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations

. . . to get to a jury without any "significant probative evidence tending to support the

complaint."'" National Ass'n of Gov't Employees, 40 F.3d at 713 (quoting Anderson,

477 U.S. at 249).

"Moreover, the nonmoving party's burden is not affected by the type of case;

summary judgment is appropriate in any case where critical evidence is so weak or

tenuous on an essential fact that it could not support a judgment in favor of the

nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation

omitted) (emphasis in original); accord Duron v. Albertson's LLC, 560 F.3d 288, 291

(5th Cir. 2009).

9

In this case, the record, including plaintiff's testimony explaining the factual basis of his claims, fails to establish a triable issue of fact as to an essential element of plaintiff's claims on which he bears the burden of proof at trial. Thus, I find that plaintiff is not entitled to judgment on either of his two federal claims as a matter of law, and that summary judgment must be granted to defendants.

## II.   MEDICAL CARE/INADEQUATE STANDARDS

It appears that Joseph was initially a pretrial detainee for part of the time and a previously convicted prisoner whose parole had been revoked for the last two months during which he complains about his medical care at Nelson Coleman. He asserts related claims that he received inadequate medical care when he was erroneously given a tuberculosis inoculation and that Sheriff Champagne, Warden Nowak and Medical Director Charles failed to have an adequate policy concerning the standard of medical care in the jail, which could have avoided the unnecessary inoculation.

Before the Fifth Circuit's decision in Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996), it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest. Bell v. Wolfish, 441 U.S. 520, 539 (1979); Cupit v. Jones, 835 F.2d 82, 85 (5th Cir. 1987); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992). The inquiry was "whether the denial of medical care . . . was objectively reasonable in light

of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on

punishment of pretrial detainees." Pfannstiel v. City of Marion, 918 F.2d 1178, 1186

(5th Cir. 1990), abrogated on other grounds as recognized in Martin v. Thomas, 973 F.2d

449, 455 (5th Cir. 1992).

> In Hare, however, the Fifth Circuit held:
>
> > (1) that the State owes the same duty under the Due Process Clause and the
> > Eighth Amendment to provide both pretrial detainees and convicted
> > inmates with basic human needs, including medical care and protection
> > from harm, during their confinement; and (2) that a state jail official's
> > liability for episodic acts or omissions cannot attach unless the official had
> > subjective knowledge of a substantial risk of serious harm to a pretrial
> > detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650. The Fifth Circuit explained that for the Bell "reasonable

relationship" test to be applicable, the pretrial detainee must be able to show that a prison

official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the

existence of an identifiable intended condition or practice" or that the "official's acts or

omissions were sufficiently extended or pervasive, or otherwise typical of extended or

pervasive misconduct by other officials, to prove an intended condition or practice." Id.

at 645.  If the pretrial detainee is unable to prove either, the incident will be considered

to be an episodic act or omission and the deliberate indifference standard enunciated in

Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply.  Shepherd v. Dallas County, 591

F.3d 445, 452 (5th Cir. 2009) (citing Bell, 441 U.S. at 539; Scott v. Moore, 114 F.3d 51,

11

53 (5th Cir. 1997); <u>Hare</u>, 74 F.3d at 649); <u>Tamez v. Manthey</u>, 589 F.3d 764, 769-70 (5th Cir. 2009) (citing <u>Scott</u>, 114 F.3d at 53; <u>Hare</u>, 74 F.3d at 649).

In <u>Estelle</u>, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. <u>Estelle</u>, 429 U.S. at 105-06; <u>accord Gregg v. Georgia</u>, 428 U.S. 153, 182-83 (1976); <u>Tamez</u>, 589 F.3d at 770; <u>Hare</u>, 74 F.3d at 650. "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." <u>Farmer v. Brennan</u>, 511 U.S. 825, 847 (1994). The <u>Farmer</u> definition applies to Eighth Amendment medical claims. <u>Reeves</u>, 27 F.3d at 176.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. If the court finds that one of the components of the test is not met, it need not address the other component. <u>Davis</u>, 157 F.3d at 1005. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."

<u>Farmer</u>, 511 U.S. at 834 (quotation omitted).  Thus, plaintiff must show that defendants "exhibited deliberate indifference to his serious medical needs."  <u>Cooper v. Johnson</u>, 353 F. App'x 965, 967 (5th Cir. 2009) (citing <u>Wilson v. Seiter</u>, 501 U.S. 294, 297 (1991)); <u>accord</u> <u>Harris v. Hegmann</u>, 198 F.3d 153, 159 (5th Cir. 1999); <u>Mendoza v. Lynaugh</u>, 989 F.2d 191, 193 (5th Cir. 1993).

Further, plaintiff must establish that defendant possessed a culpable state of mind. <u>Farmer</u>, 511 U.S. at 838 (citing <u>Wilson</u>, 501 U.S. at 298).  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id.</u> at 837; <u>accord</u> <u>Tamez</u>, 589 F.3d at 770 (citing <u>Thompson v. Upshur County</u>, 245 F.3d 447, 458-59 (5th Cir. 2001)).  "Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would <u>clearly evince a wanton disregard</u> for any serious medical needs.'"  <u>Brewster v. Dretke</u>, 587 F.3d 764, 770 (5th Cir. 2009), <u>cert. denied</u>, 130 S. Ct. 3368 (2010) (quoting <u>Domino v. Texas Dep't of Crim. Justice</u>, 239 F.3d 752, 756 (5th Cir. 2001)) (emphasis added).

> The Supreme Court has recently reaffirmed that "'deliberate indifference' is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  . . .  The "deliberate indifference" standard permits courts to separate omissions that

"amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

Southard v. Tex. Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (quoting Board of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997)) (other quotations omitted) (emphasis added); accord Tamez, 589 F.3d at 770.  "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference."  Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997).

The deliberate indifference standard applies to complaints of episodic acts or omissions, as defined in Hare, by both pretrial detainees and convicted inmates. McCarty v. Zapata County, 243 F. App'x 792, 794 (5th Cir. 2007) (citing Gibbs v. Grimmette, 254 F.3d 545, 547 (5th Cir. 2001); Hare, 74 F.3d at 636).  A complaint that defendants refused to provide plaintiff with adequate medical treatment qualifies as an "episodic act or omission," which triggers the deliberate indifference standard.  Tamez, 589 F.3d at 770.

Joseph's claim has two aspects:  (1) whether the actual erroneous giving of the inoculation and the subsequent care concerning its effects by Nurses Byrd and Hunter were constitutionally inadequate medical care, as to which the "deliberate indifference" standard would seem to apply; and (2) whether the inoculation was given pursuant to an "intended . . . practice," such that the Bell "reasonable relationship" test must be applied. Certainly, Paragraph 6 of the affidavit submitted by defendants in support of their motion

14

establishes that the inoculation was given as part of the "normal and customary tuberculosis screening performed on all inmates entering" Nelson Coleman, although it was an intended practice to <u>provide</u> medical care, not to <u>deny</u> it.  In any event, I find that no triable issue of material fact exists under <u>either</u> standard and that defendants are entitled to judgment as a matter of law.

Insofar as the deliberate indifference standard applies, it cannot be concluded that the medical condition Joseph described, consisting of a reaction to an erroneously administered tuberculosis inoculation that caused a "sore" lasting 30 days, leaving a scar when it healed, presented serious medical needs that posed a substantial risk of harm during Joseph's incarceration at the jail.  This complaint does not rise to the level of a <u>serious</u> medical need for purposes of constitutional analysis.  It is clear from plaintiff's testimony that he did not suffer "a life-long handicap or permanent loss" sufficient to constitute a serious medical need for constitutional purposes.  <u>See</u> <u>Hill v. Dekalb Reg'l Youth Detention Ctr.</u>, 40 F.3d 1176, 1188 (11th Cir. 1994) (citing <u>Monmouth County v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987) ("Where the delay [in medical care] results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.'")); <u>see also</u> <u>Lockett v. Suardini</u>, 526 F.3d 866, 877 (6th Cir. 2008) ("minor lacerations and cuts" and soreness in two fingers, which were no longer obvious upon medical examination within 24 hours after altercation, were not serious medical needs);

Vaughn v. City of Lebanon, 18 F. App'x 252, 274-75 (6th Cir. 2001) (no serious medical need when treating physicians analogized plaintiff's pepper-spray-related symptoms to a case of poison ivy and when his cuts, bruises and abrasions from struggle were visible but not permanent); Dawes v. Coughlin, 159 F.3d 1346, 1998 WL 513944, at *1 (2d Cir. 1998) (small laceration not a serious medical need); Davis v. Jones, 936 F.2d 971, 972-73 (7th Cir. 1991) (one-inch laceration not a serious medical need); Benitez v. Locastro, No. 9:04-CV-423, 2010 WL 419999, at *7 (N.D.N.Y. Jan. 29, 2010) (bruises and a laceration not serious medical conditions); Willacy v. County of Brevard, No. 04-cv-1666-Orl-18DAB, 2007 WL 1017657, at *9 (M.D. Fla. Mar. 30, 2007) (inmate who alleged that he suffered numerous lacerations, contusions, bruising and burning sensation in his eyes after being attacked by another inmate, but did not seek further medical assistance after his wounds were cleaned, failed to assert a serious medical need).  Although Joseph testified that he was concerned that the tuberculosis inoculation might threaten his life or otherwise have some long-lasting effect, he has presented no evidence that might lead to a conclusion that it did.  The scar that he testified will last a lifetime is cosmetic only and presents no life-long handicap or significant loss rising to the level of a serious medical need.

Even assuming, however, without concluding that plaintiff's condition presented a serious medical need for constitutional purposes, Joseph has alleged facts, confirmed

by his testimony and the medical records, that negate any inference of deliberate indifference by jail officials.  His complaint, as amended by his testimony and confirmed by the medical records, shows that he received constitutionally adequate medical care while incarcerated at the jail.  Anti-tuberculosis testing and inoculation for inmates upon placement in a crowded prison setting, where the risk of the spread of communicable diseases is high, can only be described as a prudent exercise of professional judgment.

> [T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment.  A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  Deliberate indifference is an extremely high standard to meet.

Gobert, 463 F.3d at 346 (footnotes, citations and internal quotations omitted).  No such showing has been made on the current record.

Moreover, this record does not support an inference that defendants were deliberately indifferent in the delivery of medical attention to Joseph.  According to plaintiff's own testimony, when his bad reaction to the inoculation was discovered by Dr. Woods a few days later, he was treated with salve and bandages until the "sore" healed in 30 days.  "Deliberate indifference" in the constitutional sense cannot be inferred under these circumstances.  See Raspberry v. Johnson, 281 F.3d 1279, 2001 WL 1692494, at *1 (5th Cir. 2001) (citing Domino, 239 F.3d at 754) (Plaintiff with injured hand and bruises

failed to allege deliberate indifference to serious medical needs when he was examined by medical personnel and the injuries healed on their own.); Johnson v. City of Centreville, No. 5:04cv309-DCB-JCS, 2006 WL 1795735, at *3-4 (S.D. Miss. June 28, 2006) (citing Raspberry, 281 F.3d at 1279; Turk v. Thomas, 121 Fed. Appx. 24, 2005 WL 32817, at *1 (5th Cir. 2005)) (There were no constitutional violations when first plaintiff's injury was not severe enough to warrant medical attention and healed on its own in a few days, and when second plaintiff was seen at hospital eight hours after altercation and was discharged after receiving minimal treatment for his injuries, including a tetanus shot, an ice pack and a pain medication prescription.); Valenzuela v. Smith, No. S 04-0900, 2006 WL 403842, at *11 (E.D. Cal. Feb. 16, 2006), report & recommendation adopted, 2006 WL 736765 (E.D. Cal. Mar. 22, 2006), aff'd, 249 F. App'x 528 (9th Cir. 2007) (No deliberate indifference was shown when plaintiff's fractured thumb was examined and treated regularly, pain medication was prescribed and radiology reports reflected progress in the healing of plaintiff's thumb and ultimately showed "a normal thumb.").

　　　Contentions like Joseph's that amount to a mere disagreement with his medical treatment or even negligence do not give rise to a Section 1983 claim.  "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534

(5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does <u>not</u> constitute deliberate indifference, even if treatment was negligently administered); <u>see also</u> <u>Rowe v. Norris</u>, 198 F. App'x 579, 580 (8th Cir. 2006) (no constitutional violation when inmate disagreed with physician's choice of medication); <u>Marksberry v. O'Dea</u>, 173 F.3d 855, 1999 WL 98533, at *2 (6th Cir. Jan. 28, 1999) (plaintiff who alleged inadequate treatment for broken hand failed to state constitutional violation, when he was examined by physician and received x-rays and medication); <u>Mendoza</u>, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); <u>Wesson v. Oglesby</u>, 910 F.2d 278, 284 (5th Cir. 1990) (allegations establishing provision of medical treatment found inconsistent with inference of deliberate indifference). Under these circumstances, plaintiff cannot state a cognizable Section 1983 claim that defendants were deliberately indifferent to his serious medical needs.

As to his claim that Sheriff Champagne, Warden Nowak, Medical Director Charles or other prison officials failed to institute an adequate medical "standard of care" screening policy that would have averted the problems Joseph allegedly experienced from the tuberculosis inoculation, the only evidence – as opposed to plaintiff's speculation – establishes just the opposite, and plaintiff's testimony is insufficient to establish supervisory, policy or "intended practice" liability under Section 1983.

First, as noted above, the policy or intended practice about which Joseph complains relates to the <u>provision of</u> medical treatment designed to combat tuberculosis, <u>not</u> to the <u>denial</u> of medical care, as addressed in <u>Pfannstiel</u>, 918 F.2d at 1186.  Thus, it is questionable whether the <u>Bell</u> "reasonable relationship" test applies in these circumstances.  <u>Hare</u>, 74 F.3d at 650.  Even if it does, however, there is obviously a clear, reasonable relationship between the tuberculosis screening procedure at Nelson Coleman and the legitimate government interest in preventing the spread of a highly communicable disease like tuberculosis in the necessarily crowded prison setting. Joseph's own testimony established that he had previously tested positive for tuberculosis in a years-earlier screening for the disease.  The alleged error in giving him an inoculation when he had already received one previously was a mere failure by both sides to communicate, not a systemic practice intended to deprive Joseph of constitutionally mandated care.

As to the supervisory defendants Sheriff Champagne, Warden Nowak and Medical Director Charles, Joseph makes no claim that they were personally involved in any of the alleged acts or omissions upon which his claims are based.  "There is no respondeat superior liability under section 1983."  <u>Eason v. Thaler</u>, 73 F.3d 1322, 1327 (5th Cir. 1996); <u>accord</u> <u>Field v. Corr. Corp.</u>, 364 F. App'x 927, 929 (5th Cir. 2010); <u>Cox v. Irby</u>, 281 F. App'x 390, 391 (5th Cir. 2008); <u>Kohler v. Englade</u>, 470 F.3d 1104, 1114-15 (5th

Cir. 2006).  Thus, these defendants cannot be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible for plaintiff's injury, if any, were in their employ or under their supervision.  Sanders v. English, 950 F.2d 1152, 1160 (5th Cir. 1992); Baskin v. Parker, 602 F.2d 1205, 1208 (5th Cir. 1979); Barksdale v. King, 699 F.2d 744, 746 (5th Cir. 1983).

To hold these defendants liable, plaintiff must establish either that they were "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [these defendants] . . . and the alleged constitutional violation."  Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981); accord Cox, 281 F. App'x at 391; Kohler, 470 F.3d at 1115.  "It is facially evident that this test cannot be met if there is no underlying constitutional violation." Rios v. City of Del Rio, 444 F.3d 417, 425-26 (5th Cir. 2006) (citing Breaux v. City of Garland, 205 F.3d 150, 161 (5th Cir. 2000)).  In the instant action, plaintiff has failed to establish either that defendants were personally involved in any acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of these defendants and the alleged constitutional violation concerning the tuberculosis inoculation.

A supervisory official may be held liable for his subordinates' actions only if the official implemented an unconstitutional policy that causally resulted in plaintiff's injury. Monell v. Dep't of Social Servs., 436 U.S. 658, 691-95 (1978); Thompson v. Johnson,

348 F. App'x 919, 921 (5th Cir. 2009) (citing Mouille v. City of Live Oak, 977 F.2d 924, 929 (5th Cir. 1992)); Gates v. Tex. Dep't of Protective & Regulatory Servs., 537 F.3d 404, 435 (5th Cir. 2008).   To hold a supervisory official liable for the acts of a subordinate, "plaintiff must show that (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference."  Smith v. Brenoettsy, 158 F.3d 908, 911-12 (5th Cir. 1998); accord Reyes v. Bridgwater, 362 F. App'x 403, 409 (5th Cir. 2010).   No evidence tending to establish any of these essential elements of this kind of claim by Joseph, particularly not the deliberate indifference element, has been presented.

For all of the foregoing reasons, plaintiff's complaint in this case about his medical care and an allegedly insufficient medical "standard of care" or policy fail to establish a triable issue under Section 1983 or that plaintiff might be entitled to relief as a matter of law.  Defendants' motion for summary judgment as to this claim must be granted.

## III.   RETALIATION

Joseph asserts that he was subjected to retaliation by defendants Dale, Brooks, Walker and Beard for having filed grievances in the prison ARP.  Specifically, he testified that Captain Dale wrote him up for a disciplinary violation for having filed a grievance and that defendants Brooks, Walker and Beard served on the Disciplinary

Board that imposed a punishment of three weeks of lost commissary privileges based upon Dale's disciplinary report.

In this regard, Joseph attempts to establish a claim of retaliation for exercising his First Amendment rights.  Prison officials may not retaliate against a prisoner for exercising his First Amendment rights of access to the courts or to complain through proper channels about a guard's misconduct through the grievance process.  Morris v. Powell, 449 F.3d 682, 684 (5th Cir. 2006); Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995).

The law in the Fifth Circuit concerning prisoner retaliation claims has undergone substantial evolution in recent years.  It is based on the following general principles:

> The elements of a retaliation claim are the invocation of a specific constitutional right, the defendants' intent to retaliate against the plaintiff for his or her exercise of that right, a retaliatory adverse act, and causation, i.e., but for the retaliatory motive the complained of incident . . . would not have occurred.  With respect to the last element, we [have] emphasized that an action motivated by retaliation for the exercise of a constitutionally protected right is actionable even if the act, when taken for a different reason, may have been legitimate.

Clarke v. Stalder, 121 F.3d 222, 231 (5th Cir. 1997), vacated in part & reinstated in relevant part, 154 F.3d 186 (5th Cir. 1998) (citing Bounds v. Smith, 430 U.S. 817 (1977); Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997); Woods, 60 F.3d at 1164-66) (quotations and additional citations omitted).

In <u>Woods</u>, the Fifth Circuit, applying the general First Amendment principles addressed above, affirmed the district court's denial of defendants' motion for summary judgment.  Defendants in that case had sought dismissal of a prisoner's claim based on allegedly false disciplinary charges by defendants in alleged retaliation for plaintiff's letters of complaint to a federal judge and to the warden of the prison.  The Fifth Circuit agreed that the inmate's retaliation claim should be permitted to proceed, but in doing so it expressed the following caution:  "The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." <u>Woods</u>, 60 F.3d at 1166 (citation and quotation omitted).  The Fifth Circuit warned that "trial courts must carefully scrutinize these claims."  <u>Id.</u>

> To state a claim of retaliation <u>an inmate must allege the violation of a specific constitutional right</u> and be prepared to establish that but for the retaliatory motive the complained of incident . . . would not have occurred. This places a significant burden on the inmate . . . .   The inmate must produce direct evidence of motivation or, the more probable scenario, "allege a chronology of events from which retaliation may plausibly be inferred."

<u>Id.</u> (citations omitted) (emphasis added).

A year later, the United States Supreme Court reexamined the scope of prisoners' First Amendment right of access to the courts in <u>Lewis v. Casey</u>, 518 U.S. 343 (1996).

24

The Supreme Court made clear in <u>Lewis</u> that an inmate <u>must establish actual injury</u> to state a claim for denial of his First Amendment rights.  <u>Id.</u> at 349-50.

More recently in <u>Morris</u>, a case of first impression in the Fifth Circuit, the court addressed "[w[hether an allegation of <u>de minimis</u> retaliatory acts can support a retaliation claim" under the First Amendment.  <u>Morris</u>, 449 F.3d at 684.  The court stated that

> [t]he question . . . is not whether the violation of [plaintiff's] constitutional rights was <u>de minimis</u>, but whether any violation occurred at all.  To establish a constitutional violation, an inmate must show that he suffered <u>a qualifying adverse retaliatory act</u>.  If the retaliation alleged by [plaintiff] does not pass this bar, he has suffered no constitutional injury.

<u>Id.</u>  The Fifth Circuit held that

> [t]he purpose of allowing inmate retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising constitutional rights.  Some acts, though maybe motivated by retaliatory intent, are so <u>de minimis</u> that they would not deter the ordinary person from further exercise of his rights.  Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. . . .
>         . . . .  Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights.
>         With this standard in mind, we turn to the specific retaliation alleged by [plaintiff] to determine whether the actions of the [prison] officials would have deterred a person of ordinary firmness from exercising his First Amendment right to file grievances against prison officials.

<u>Id.</u> at 686 (citing <u>Crawford-El v. Britton</u>, 523 U.S. 574, 588 n.10 (1998)).  In <u>Morris</u>, the Fifth Circuit found that transferring plaintiff "to a less desirable job within the prison" did "<u>not</u> rise to the level of actionable retaliation."  <u>Id.</u> at 687.  On the other hand, the

25

Morris court found that transferring the prisoner to a demonstrably more dangerous prison facility was a more than de minimis retaliatory action that could deter a person of ordinary firmness from further exercising his constitutional rights.  Id.

The Fifth Circuit's reasoning and rulings in Morris accord with the Supreme Court's holding in Lewis that a prisoner who brings a retaliation claim under the First Amendment must allege actual injury in order to assert a claim.  Furthermore, the alleged retaliatory acts must be more than de minimis, which means they must be capable of deterring a person of ordinary firmness from further exercising his constitutional rights.

Thus, the law in the Fifth Circuit

> is well established that prison officials may not retaliate against an inmate who exercises his right of access to court.  Officials likewise may not retaliate against an inmate for using the grievance system.  A plaintiff must allege facts showing that the defendant possessed a retaliatory motive.  The inmate must show more than his personal belief that he was the victim of retaliation.  Mere conclusory allegations of retaliation are not enough.  In order to proceed on his claims, a plaintiff must show that the retaliatory adverse act [was] more than a de minimis act.

Decker v. McDonald, No. 5:09cv27, 2010 WL 1424322, at *15 (E.D. Tex. Jan. 11, 2010) (citing Morris, 449 F.3d at 687; Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999); Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997); Moody v. Baker, 857 F.2d 256, 258 (5th Cir. 1988); Whittington v. Lynaugh, 842 F.2d 818, 820 (5th Cir. 1988); Hilliard v. Board of Pardons & Paroles, 759 F.2d 1190, 1193 (5th Cir. 1985); Ruiz v. Estelle, 679 F.2d 1115, 1153 (5th Cir.), amended in part & vacated in part, 688 F.2d

26

266 (5th Cir. 1982); <u>Campbell v. Beto</u>, 460 F.2d 765, 768 (5th Cir. 1972)), <u>report &</u>
<u>recommendation adopted</u>, 2010 WL 1424292 (E.D. Tex. Apr. 7, 2010) (emphasis added).
Plaintiff bears the burden of proof at trial as to all of these essential elements.

In the instant case, Joseph's evidence fails to create a triable fact issue "that he
suffered a qualifying adverse retaliatory act," <u>Morris</u>, 449 F.3d at 684, or that he suffered
any actual injury caused by the alleged retaliation. As to defendants Beard, Walker and
Brooks, whose only role was to serve on the Disciplinary Board that imposed the 21 days
of lost commissary privileges based on Dale's disciplinary report, it is clear as a matter
of law that "[t]heir mere involvement in the disciplinary proceedings against [Joseph]
without more, does <u>not</u> establish either retaliatory motive or causation." <u>Hart v. Hairston</u>,
343 F.3d 762, 765 (5th Cir. 2003) (emphasis added). As in <u>Hart</u>, summary judgment on
the retaliation claim against these three disciplinary board members must be granted.

On the other hand, Joseph's claim against defendant Dale, who wrote the
disciplinary charge against him related to Joseph's ARP grievance, presents a closer
question. Dale's written report clearly referred to Joseph's ARP grievance, particularly
his pursuit of it to a second step after having been advised that parole proceedings were
not a proper subject of the ARP, as the basis for the disciplinary violation. Joseph was
"written up" in this way in close time proximity to his pursuit of the grievance. These
are facts indicative of retaliatory motive. The evidence in Cardella's affidavit that Joseph

"was granted the proper response to his grievances" does <u>not</u> establish lack of retaliatory motive as an undisputed fact. If retaliatory motive was the <u>only</u> essential element of plaintiff's retaliation claim as to which he bears the burden of proof at trial, summary judgment would be inappropriate and this claim against Dale would have to proceed.

However, the law is clear that in response to a summary judgment motion, plaintiff must produce evidence sufficient to create a triable issue as to <u>all</u> essential elements of his claim.  <u>Celotex</u>, 477 U.S. at 321-23.  In the instant case, I find that Joseph has presented evidence that cannot sustain his burden of proof on two essential elements of his retaliation claim:  "a qualifying adverse retaliatory act," <u>Morris</u>, 449 F.3d at 684, and causation of actual injury.

In <u>Hart</u>, while the Fifth Circuit affirmed dismissal of the retaliation claims against the disciplinary board members, it reversed the trial court's grant of summary judgment in favor of the prison officer who (like Dale in the instant case) wrote the disciplinary charge.  The Fifth Circuit found that the resulting discipline, "27 days of commissary <u>and</u> cell restrictions</u>," <u>id.</u> at 763 (emphasis added), were more than de minimis and that a cognizable retaliation claim had therefore been stated against the officer who filed the disciplinary charge.

I find that the penalties imposed on the prisoner in <u>Hart</u> were in fact more serious than those imposed on Joseph in this case and that Joseph's penalties were

inconsequential in comparison and <u>not</u> so severe as to deter a person of ordinary firmness from further exercise of his constitutional rights.  In <u>Hart</u>, the prisoner was punished with 27 days of commissary <u>and</u> cell restrictions.  Joseph's punishment was about one week <u>less</u> of commissary restrictions only.  There is <u>no</u> evidence that <u>any cell restrictions</u> were imposed.  <u>See</u> <u>Johnson v. Kelly</u>, No. H-02-0344, 2007 WL 1849001, at *11 (S.D. Tex. June 25, 2007) ("The Fifth Circuit [in <u>Hart</u>] apparently considered the cell restriction portion of the punishment as comparable to a transfer to administrative segregation."). Joseph testified that his temporary loss of commissary privileges, amounting to an inability to buy snack foods and extra personal items not provided to all prisoners in the ordinary provision of meals and other supplies, was the only punishment imposed. Joseph did <u>not</u> testify about any cell or other kinds of administrative restrictions.  Dale's disciplinary report, which Joseph himself submitted to the court for my consideration, specifically notes that <u>no</u> administrative segregation was imposed. Record Doc. No. 9 at p. 10.  Thus, plaintiff's evidence establishes only de minimis acts that do not rise to the level of "a qualifying adverse retaliatory act."  <u>See</u> <u>Johnson</u>, 2007 WL 1849001, at *11 (citing <u>Morris</u>, 449 F.3d at 686) (prisoner who was punished with ten-day loss of commissary privileges after being convicted of minor disciplinary offense failed to show more than a de minimis adverse act).

In addition, I cannot discern any actual injury causally related to the alleged retaliatory acts.  Certainly, no separate deprivation of constitutional rights occurs through a short-term denial of prison commissary privileges.  The Fifth Circuit has held that an inmate "does not have a federally protected liberty interest in having . . . grievances resolved to his satisfaction.  As he relies on a legally nonexistent interest,  any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless."  Geiger v. Jowers, 404 F.3d 371, 374-75 (5th Cir. 2005) (citing Sandin v. Conner, 515 U.S. 472, 484 (1995) (liberty interests "will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.")); Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995)); accord Bell v. Woods, 382 F. App'x 391, 392 (5th Cir. 2010), petition for cert. filed, No. 10-6770 (Sept. 22, 2010); Johnson v. Livingston, 360 F. App'x 531, 532 (5th Cir. 2010), cert. denied, No. 09-10742, 2010 WL 1942272 (Oct. 4, 2010).

Moreover, denial of commissary privileges has repeatedly been found not to constitute an "extreme deprivation" for Eighth Amendment purposes.  Ward v. Oliver, 19 F.3d 1436, 1994 WL 66653, at *3 (7th Cir. Mar. 4, 1994) (Eighth Amendment does not dictate access to particular commissary items); Allen v. DeTella, No. 96 C 5120, 1997 WL 106098, at *4 (N.D. Ill. Feb. 6, 1997) (commissary restrictions on particular

foods did "not constitute atypical and significant hardships on an inmate"); <u>Davie v. Wingard</u>, 958 F. Supp. 1244, 1256-57 (S.D. Ohio 1997) (denial of commissary privileges did not state a claim under the Eighth Amendment).

Furthermore, unlike the "sore," scar or physical discomfort allegedly connected to his medical care claim, no compensatory injury of the sort contemplated by 42 U.S.C. § 1997e(e) can be found on this record to have been caused by Dale's alleged retaliation.

In the instant case, Joseph alleges that he was deprived of commissary privileges for three weeks in retaliation for filing an ARP grievance, <u>not</u> concerning prison conditions, but about the circumstances of his arrest outside the jail. This was an inconsequential action, incapable of deterring a person of ordinary firmness from further exercising his constitutional rights. Joseph in fact was <u>not</u> deterred. He initially tendered this lawsuit to this court, together with other preliminary motions, while still incarcerated in Nelson Coleman. Record Doc. Nos. 1-5 and 6 (Complaint at ¶'s II and III(A).[2] I cannot conclude that being deprived of the ability to buy snack foods at the prison commissary for three weeks would be enough to deter a person of ordinary firmness from

---

[2]I note that in this regard Joseph might be considered to be someone more than "a person of ordinary firmness." In the course of his career as an incarcerated person, he has been a frequent filer of civil rights lawsuits, including many that have been dismissed as legally frivolous or for failure to state a claim. Record Doc. No. 2 (Order denying in forma pauperis application pursuant to 28 U.S.C. § 1915(g)). Nevertheless, I find that even a person of ordinary firmness would not have been deterred under these circumstances.

exercising his constitutional rights or that it constituted actual injury sufficient to support a Section 1983 retaliation claim against Dale or any other defendant.

Plaintiff's retaliation claim in this case establishes no qualifying adverse retaliatory acts and no actual injury caused by any such act. He presents no evidence sufficient to establish <u>all</u> essential elements of his First Amendment retaliation claim, as to which he bears the burden of proof at trial. He cannot show the existence of either a retaliatory motive or causation of actual injury. Accordingly, his retaliation claim must be dismissed.

V.     <u>STATE LAW CLAIMS</u>

In the absence of a cognizable federal claim, any state law claims asserted by plaintiff are not within this court's supplemental subject matter jurisdiction. 28 U.S.C. § 1367(a). A district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." <u>Id.</u> § 1367(c)(3). The "general rule" in the Fifth Circuit "is to decline to exercise jurisdiction over pendent state law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial." <u>Batiste v. Island Records, Inc.</u>, 179 F.3d 217, 227 (5th Cir. 1999) (citation omitted); <u>accord</u> <u>Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.</u>, 554 F.3d 595, 602 (5th Cir.), <u>cert. denied</u>, 129 S. Ct. 2865 (2009). However, "this rule is neither mandatory nor absolute. Thus, while the

district court's dismissal of the [plaintiff's] federal claims provides a powerful reason to choose not to continue to exercise jurisdiction, no single factor is dispositive in this analysis."  Batiste, 179 F.3d at 227 (quotations and citations omitted); accord Certain Underwriters at Lloyd's, 461 F.3d 568, 578 (5th Cir. 2006).

The court's determination whether to exercise supplemental jurisdiction is guided by "both the statutory provisions of 28 U.S.C. § 1367(c) and the balance of the relevant factors of judicial economy, convenience, fairness, and comity that the Supreme Court outlined in Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350-51 (1988), and United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)."  Batiste v. Island Records, Inc., 179 F.3d 217, 227 (5th Cir. 1999).

The statutory considerations are whether

(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  The district court must make its decision "in light of the specific circumstances of the case at bar."  Batiste, 179 F.3d at 227 (quotation and citation omitted).

In the instant case, all federal claims have been dismissed. Neither the court nor the parties have invested significant time or effort in discovery, motion practice or trial preparation concerning the state law claims. Whether a state law enforcement officer collecting evidence at an arrest scene can be liable for "theft" or "slander," as plaintiff has alleged, are purely questions of state law best left to the state court. Accordingly, pursuant to Section 1367(c) and having balanced the relevant factors of judicial economy, convenience, fairness, and comity, the court should decline to exercise jurisdiction over Joseph's state law claims and dismiss them <u>without</u> prejudice for all purposes contemplated by 28 U.S.C. § 1367(d). <u>Mendoza v. Murphy</u>, 532 F.3d 342, 347 (5th Cir. 2008); <u>Brim v. ExxonMobil Pipeline Co.</u>, 213 F. App'x 303, 306 (5th Cir. 2007); <u>Smith v. Amedisys Inc.</u>, 298 F.3d 434, 447 (5th Cir. 2002).

<u>CONCLUSION</u>

For all of the foregoing reasons, it is **ORDERED** that defendants' motion for summary judgment is **GRANTED**. Plaintiff's Section 1983 claims are **DISMISSED WITH PREJUDICE**. Plaintiff's state law claims are **DISMISSED WITHOUT**

**PREJUDICE**.  Plaintiff must bear all costs of these proceedings.  Fed. R. Civ. P.

54(d)(1).  Judgment will be separately entered accordingly.

New Orleans, Louisiana, this _____30th_____ day of November, 2010.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE